UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>KENDRA NICOLE LEWIS, )<br>)<br>Defendant; )<br>)<br>and )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>THERESA BOWLING, )<br>)<br>Defendant. )<br>) | Crim. No. 6:14-cr-00019-GFVT-HAI<br>Crim. No. 6:14-cr-00024-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on the United States' Motions for Reconsideration of the Denial of Restitution and its subsequent briefs in support of those motions. [R. 67; R. 75.] As noted previously, the United States continues to make identical filings in these two related cases.[1]  [*See* R. 40 and R. 48, *United States v. Theresa Bowling*, 6:14-cr-00024-GFVT.] The Court has now directed briefing from the respective Defendants and held a joint hearing regarding the propriety of restitution in the related matters. For the reasons that follow, the

---

[1] The United States' filings are identical, albeit with different Docket Entry numbers. Unless otherwise indicated, any citation to the record in the present Order refers to filings in *United States v. Kendra Nicole Lewis*, Crim. No. 6:14-cr-00019-GFVT-HAI. In contrast to previous Orders, the present Order will be entered in both cases, without any change to the citations.

United States' Motions for Reconsideration are **GRANTED**.

**I**

In early 2014, both Ms. Lewis and Ms. Bowling were charged with numerous fraud and identity theft charges pursuant to 18 U.S.C. §§ 1349 and 1028. [R. 67 at 1–2.] Shortly thereafter, additional charges were brought against Ms. Bowling, including a charge for wire fraud, in violation of 18 U.S.C. § 1343. *Id.* at 2. These various charges stemmed from a scheme engaged in by the two Defendants to defraud Capitol Finance, a lending company in Hyden, Kentucky. [*See* R. 1-1 at 3; R. 63 at 1.]

On April 23, 2014, Ms. Lewis pled guilty to two counts of aggravated identify theft, 18 U.S.C. § 1028A(a)(l). [R. 67 at 2.] Subsequently, on June 12, 2014, Ms. Bowling pled guilty to one count of wire fraud, 18 U.S.C. § 1343. *Id.* In 2015, both were sentenced, and in each case this Court ordered restitution "TBD," as reflected in the respective judgments. [*See* R. 58; R. 31, 6:14-cr-00024-GFVT.] As explained by the Court during Ms. Bowling's sentencing, in both cases the determination of the "actual restitution" as between Ms. Bowling and Ms. Lewis was reserved for some point in the future, after Ms. Lewis, the final related defendant, was sentenced. [R. 39 at 11, 6:14-cr-00024-GFVT.]

Notably, there was a third related Defendant, Ms. Deborah Wilson, who pled guilty for the role she played in the scheme to defraud Capitol Finance. [R. 67 at 2.] Substantial restitution in the amount of $106,015 was imposed against Ms. Wilson as part of her January 2015 sentence and the United States is not requesting that her restitution order be amended. *Id.* at 1 fn. 1; *see also id.* at 2. It bears noting, however, that in her judgment Ms. Wilson was ordered to pay restitution jointly and severally with both Ms. Lewis and Ms. Bowling.[2] [*See* R.

---

[2] Ms. Wilson's restitution obligation will be discussed more fully below. *See infra* Section II.C.

17 at 6, *United States v. Deborah Wilson*, 6:14-cr-00028-GFVT.] But at the time Ms. Wilson's judgment was entered, January 2015, a determination of the nature and amount of Ms. Lewis and Ms. Bowling's restitution had not been made.

On June 24, 2016, nearly one year after Ms. Lewis' July 2015 sentencing, the United States filed a motion to amend the judgments of both Ms. Lewis and Ms. Bowling to reflect that they owed restitution in the amount of $420,806.20. [R. 61; R. 67 at 2.] Those respective motions, however, failed to clarify as to whether restitution was to be joint and several with the defendants in related cases, as was contemplated within the context of sentencing. [*See* R. 62.] When the Court ordered clarification on this matter, the United States failed to provide a sufficient basis for ordering such restitution. [*See* R. 64 at 1–2 ("[T]he Court will not order restitution to be joint and several with defendants in different cases in which there is no clear record as to the basis for ordering such restitution, and where those defendants have not been put on notice of the government's request.").] So, the Court denied without prejudice the motions to amend the judgments of Ms. Lewis and Ms. Bowling, leaving open the possibility that the United States could make suitable curative filings. [R. 64; R. 37, 6:14-cr-00024-GFVT.] In September 2019, more than three years after the motions to amend were initially denied, the United States filed a motion for reconsideration, "highlighting the appropriateness of joint and several restitution between Defendants Lewis and Bowling." [R. 67 at 3.]

The Court provided Ms. Lewis and Ms. Bowling an opportunity to respond to the United States' most recent motion and, following submission of the response briefs, directed additional briefing and scheduled a joint restitution hearing. [*See* R. 71.] The joint hearing was held on August 17, 2020 and the Court has now considered the arguments of the parties, as set forth both in the briefing and at the hearing. The matters are now ripe for adjudication.

**II**

**A**

Under 18 U.S.C. § 3664(d)(5), a sentencing court is "statutorily obligated to resolve the restitution issue within 90 days of the sentencing hearing." *United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000); *Dolan v. United States*, 560 U.S. 605, 608 (2010). However, a sentencing court that misses this 90-day deadline retains the power to order restitution where it has "made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Dolan*, 560 U.S. at 608. Indeed, the United States points to precedent in this circuit where "the imposition of a restitution order almost two years after the original sentence was imposed" was upheld. [R. 67 at 3 (citing *United States v. Bogart*, 576 F.3d 565 (6th Cir. 2009)).

Importantly, in both Defendants' judgments, the Court made clear restitution would be imposed at a later date, indicating the restitution amount was "TBD" or "to be determined." [R. 58 at 5; R. 31 at 5, 6:14-cr-00024-GFVT.] And, as noted above, at Ms. Bowling's sentencing the Court explained that determination of the "actual restitution" as between Ms. Bowling and Ms. Lewis was reserved for some point in the future, after Ms. Lewis, the final related defendant, was sentenced. [*See* R. 39, 6:14-cr-00024-GFVT.] So, the Court "made clear prior to the [90-day] deadline's expiration that it would order restitution," such that the deadline is no longer in play. *Dolan*, 560 U.S. at 608. This established, the significant amount of time that has passed since the respective sentencings warrants closer review.

In both cases, more than five years have passed since the original sentences were imposed. [*See* R. 58 (Kendra Lewis' July 2, 2015 Judgment); R. 31, 6:14-cr-00024-GFVT (Theresa Bowling's February 13, 2015 Judgment).] Based on this delay, Defendants argue that

4

the United States' motion for reconsideration is untimely. [R. 69 at 1–5; R. 42 at 1–4, 6:14-cr-00024-GFVT.] Both Defendants concede that the Court retains the authority to impose restitution beyond ninety days but argue it would be "unfair" to impose restitution after such a lengthy delay. [*See* R. 69 at 4; R. 42 at 6, 6:14-cr-00024-GFVT.] But neither offers a convincing argument as to why delayed restitution would be unfair in their respective cases.

In analyzing Defendants' timeliness arguments, it is important to first note the purpose of 18 U.S.C. § 3664(d)(5)'s requirement that courts determine restitution in a timely manner. At a base level, the Supreme Court has explained "that the [MVRA] seeks primarily to ensure that victims of a crime receive full restitution." *Dolan*, 560 U.S. at 612. So, as relevant here, the *Dolan* court explained further that "the Act's efforts to secure speedy determination of restitution is *primarily* designed to help victims of crime secure prompt restitution . . . ." *Id.* at 613 (citation omitted) (emphasis in original); *see also id.* at 612 ("[T]he statute's text places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes.").

True, the *Dolan* court also recognized the need to provide defendants with finality and certainty in the sentencing process. *Id.* at 613 (citation omitted). But outside of generally crying foul, these Defendants have failed to explain how they might be negatively impacted by a delayed restitution order.[3] Indeed, as the Court noted during the recent restitution hearing, arguably the delay worked in Defendants' favor, allowing them to regain financial footing before beginning to pay restitution. Moreover, Defendants have always known restitution would be

---

[3] Defendants also raise the concern that any amended judgment will be unappealable. [*See* R. 69 at 3–4.] On review of the relevant case law, the Court finds this concern lacks merit. *See Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) (footnote omitted) ("Our analysis in *Dolan* makes clear that deferred restitution cases involve two appealable judgments, not one."); *see also Dolan*, 560 U.S. 605 at 618.

imposed and any claim of surprise as to the requested amount is suspect given the respective plea agreements and discussions at sentencing. [*See* R. 54 at 4; R. 28 at 3, 6:14-cr-00024-GFVT ("[R]estitution shall cover the entire scheme to defraud, as determined by the Court."); R. 42 at 4, 6:14-cr-00024-GFVT ("At Theresa's sentencing there was much discussion of the 'loss' attributable to Theresa's conduct.").] On the other hand, the victim has yet to be fully compensated for the loss which resulted from Defendants' criminal conduct. So, if anything, it would be unfair to *not* impose restitution. *See Dolan*, 560 U.S. at 613–14 ("[T]o read the statute as depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit.").

In sum, the equities weigh heavily in favor of ordering restitution in order to ensure the victims of Defendants' crimes receive full restitution. Thus, the Court will analyze whether restitution is proper based on the substance of the United States' motion, notwithstanding the significant delay in seeking restitution. This holding is not meant to condone the United States' dilatory conduct in this case. To the contrary, the Court is troubled by the United States' lack of diligence in obtaining restitution on behalf of the victim(s). As a partial explanation for the delay, counsel for the United States represented at the restitution hearing that he had only recently been assigned to Defendants' cases. Of course, the Court acknowledges that personnel turnover presents challenges. Regardless, systems are in place to ensure turnover does not result in neglect. A course of conduct marked by repeated failures to provide the Court with sufficient information and a three-year delay in making the curative filings is simply unacceptable.

**B**

Both Ms. Lewis and Ms. Bowling were convicted of property offenses "committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). So, the Mandatory Victims Restitution Act (MVRA) requires the Court to order restitution as part of their sentences. 18 U.S.C. § 3663A(a)(1). Under the MVRA, in such cases, a court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

For MVRA purposes, a victim means:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). The Government bears the burden of proof to demonstrate the amount of loss sustained by a victim and a victim's losses must be demonstrated by a preponderance of the evidence. §3664(e).

The "preponderance of the evidence" standard requires a trier of fact, here, the Court, to find "the existence of a fact is more probable than its nonexistence." *Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371–72 (1970)). Because the burden here rests on the Government, the Government must persuade the Court of the existence of its proposed facts. *Id*. Importantly, evidence "underlying an award must have sufficient indicia of reliability to support its probable accuracy." *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016) (citations and quotations omitted). When the calculated loss amount is disputed, the Court must make adequate factual findings. *United States v. Sexton*, 894 F.3d 787, 801 (6th Cir. 2018).

**1**

At all relevant times, Ms. Lewis and Ms. Bowling were employees of Capitol Finance—Ms. Bowling serving as the manager and Ms. Lewis as the assistant manager. [*See* R. 54 at 2.] Over the course of several months, Capitol Finance became the financial victim of the Defendants' criminal conduct. As set forth in Ms. Lewis' plea agreement:

> In or about November 2008, and continuing through April 9, 2009, Bowling, Lewis, and Wilson devised a scheme to defraud Capitol Finance by unlawfully obtaining social security numbers, dates of birth, and drivers' licenses from various sources, and then using that information for the purpose of creating and causing fraudulent loan checks to be issued by Capitol Finance to such persons. Once the checks were issued, Bowling and Lewis would then cash the checks at a local bank and keep the cash for the personal benefit of Bowling, Lewis, and Wilson.

[*Id.*; *see also* R. 28 at 2, 6:14-cr-00024-GFVT (Ms. Bowling's plea agreement).]

Based on this scheme, the United States argues joint and several restitution is proper as to both Defendants in the amount of $420,806.20. [R. 67.] But in its motion for reconsideration, the United States relied solely on "the four corners of the plea agreement[s]" and testimony at the sentencings to support its request for the requested restitution. *Id.* at 6–10. In reviewing that motion, the Court deemed this evidence insufficient, explaining that due in part to the lack of documentation, it remained unclear "[w]hether restitution is proper in the nature and amount requested . . . ." [R. 71 at 1.] Accordingly, the Court directed the United States to file a brief "addressing the requested restitution amount with specificity as to the amount attributable to each victim and how that amount was determined, along with the appropriate documentation." *Id.* at 2.

The United States complied fully. In its brief in support of restitution, the United States attached a spreadsheet of the losses to Capitol Finance, along with supporting documentation identifying the various fraudulent loans executed by Ms. Lewis and Ms. Bowling. [*See* R. 77-1;

8

R. 77-2; R. 77-3; R. 77-4.] Defendants' responses in opposition to restitution largely focus on the timeliness concern and offer little to no argument concerning whether the amount requested by the United States is supported by the evidence. [*See* R. 69; R. 42, 6:14-cr-00024-GFVT.] In fact, following the United States' submission of the spreadsheet of the losses and documentation in support, Defendants failed to make any argument attacking the reliability or accuracy of the estimated amount of loss. [*See, e.g.*, R. 53 at 1, 6:14-cr-00024-GFVT ("There is nothing new in [the United States'] most recent Brief.").] The same held true at the recent joint restitution hearing. The Court is left to determine whether restitution is proper in the amount and nature requested based on the spreadsheets and comprehensive supporting documentation, as viewed in combination with the Defendants' plea agreements and testimony at sentencing.

    First, the amount. For one, Ms. Lewis specifically agreed in her plea agreement to be liable for $420,806.20 in restitution. [R. 54 at 4.] And, importantly, the $420,806.20 amount of total loss to Capitol Finance is supported by the United States' spreadsheet and supporting documentation. [*See* R. 77-4 at 17; R. 75 at 2.] It is well established that in the Sixth Circuit, "a summary chart, when supported by additional evidence, can be used by the government to establish losses for the purposes of restitution." *United States v. Carmichael*, 676 F. App'x 402, 412 (6th Cir. 2017) (citing *United States v. Sawyer*, 825 F.3d 287, 296 (6th Cir. 2016). And here, the United States' spreadsheet provides a clear and full account of the transactions at issue. [R. 77-4.] Based in large part on the spreadsheet, the Court finds that the United States' calculation of the "total net restitution loss to Capitol Finance" is reasonable. [*See* R. 75 at 2.] Again, neither Defendant has attacked the calculation in any substantive manner.

    This established, it is true that Ms. Bowling did not agree to a specific amount in her plea agreement. [*See* R. 42 at 2, 6:14-cr-00024-GFVT.] But she did "acknowledge[] that . . .

9

restitution shall cover the entire scheme to defraud, as determined by the Court." [R. 28 at 3, 6:14-cr-00024-GFVT.] This is where the interconnected nature of the criminal conduct comes into play.

Where a defendant is convicted of "'knowingly executing, or attempting to execute a scheme or artifice'" to defraud a financial institution, the Sixth Circuit has made clear that a district court may order restitution "based on [the] entire scheme, . . . includ[ing] conduct underlying the dismissed and acquitted counts." *United States v. Churn*, 800 F.3d 768, 781 (6th Cir. 2015) (citing 18 U.S.C. § 1344) (cleaned up). Here, the record demonstrates that Ms. Lewis and Ms. Bowling were both heavily involved throughout the entire scheme to defraud Capitol Finance. Indeed, the fraud scheme was a true team effort. [*See, e.g.*, R. 77-4 at 25 ("Theresa posted all payment. Nikki posted collection activity."); R. 21 at 45, 6:14-cr-00024-GFVT (Question: "Who originated this loan?"; Answer: "Nikki [Nicole] Lewis."; Question: "And then who closed the loan and endorsed the check?"; Answer: "Theresa [Bowling].").] To this point, the United States points out that "of the 89 loans Bowling specifically authorized and originated, 84.69% of those loans involved co-Defendant Lewis posting to the loan file fraudulent collection activity." [R. 75 at 3.]

In short, Ms. Lewis and Ms. Bowling played an active role in defrauding Capitol Finance and worked together for their own personal benefit. The MVRA expressly provides that joint and several liability is proper in this scenario, stating: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution . . . .". *See* 18 U.S.C. § 3664(f)(2). For the above reasons, the Court finds that Ms. Lewis and Ms. Bowling will be jointly and severally liable for the full amount of loss, which the United States has proven by a preponderance of the evidence

to be $420,806.20. Ms. Lewis and Ms. Bowling shall make their respective restitution payments in monthly installments, in an amount to be determined by the United States Probation Office after a review of the Defendants' current financial situations. *See* 18 U.S.C. § 3664(f)(2).

### 2

Before proceeding further, the Court notes that Defendants' argument concerning the October 2018 dissolution of the corporate victim, Capitol Finance, is well taken but will not carry the day. [R. 42 at 4, 6:14-cr-00024-GFVT.] Under the MVRA, courts have broad discretion in directing restitution payments. *See* 18 U.S.C. § 3663(a)(2). And in this case, the United States represents that "there are successors to that restitution interest who would be entitled to a restitution order." [R. 43 at 2.]

Specifically, the United States has identified Clyde Vez Bennett IV—the sole member of Capitol Finance at dissolution—as the successor in interest and victim for restitution purposes. [*See* R. 86 at 1.] The United States has provided the necessary documentation to support this assertion [*see* R. 86-1; R. 86-2] and, accordingly, the Court will direct the restitution payments be made to Mr. Bennett. Notably, the Sixth Circuit has implicitly endorsed restitution payments to similar victims. *See United States v. Donohue*, 726 F. App'x 333, 357 (6th Cir. 2018), *cert. denied sub nom. DeCiancio v. United States*, 139 S. Ct. 242 (2018) ("If the successors in interest or the individuals who actually sustained the losses . . . as a result of defendants' fraud are unavailable or cannot be ascertained, we are confident that the U.S. Attorney will make pro rata distribution of restitution payments to others of the numerous victims.").

### C

Finally, the Court notes the impact, or lack thereof, of this Order on Defendant Deborah Wilson. As noted above, Ms. Wilson was ordered to pay restitution jointly and severally with

both Ms. Lewis and Ms. Bowling prior to any restitution being imposed on these Defendants. [*See* R. 17 at 6, *United States v. Deborah Wilson*, 6:14-cr-00028-GFVT.] Now, the United States represents that it is not requesting the Court amend Ms. Wilson's judgment, as "[a]mending Wilson's judgment would run afoul of the law." [R. 75 at 5 (citing 18 U.S.C. § 3664(o)).] The Court agrees and, as joint and several liability for the restitution amount is imposed against Ms. Lewis and Ms. Bowling by way of this Order, this is largely a moot point.

The nuance is that Ms. Wilson was only ordered to pay $106,015 whereas Ms. Lewis and Ms. Bowling will be jointly and severally liable for $420,806.20. So, for practical purposes, what does the present Order mean as it relates to Ms. Wilson's obligation to pay? Simple: Ms. Wilson must continue to make restitution payments until either the victim, here, Mr. Bennett, is compensated in full ($420,806.20), or until Ms. Wilson's individual payments exceed $106,015. *See United States v. Sheets*, 814 F.3d 256, 261 (5th Cir. 2016) ("[T]he MVRA permits the Government to hold any individual defendant liable for as much as the court ordered as to that defendant, but the government may not collect more from all defendants together than will make the victim whole."); *see also United States v. Osborne*, No. 1:06-CR-00006-R, 2010 WL 4788169, at *2 (W.D. Ky. Nov. 17, 2010) (citing 18 U.S.C. § 3664(h)).

### III

"Justice cannot be considered served until full restitution is made." *Dolan*, 560 at 613 (cleaned up) (quoting S.Rep. No. 104–179, p. 20 (1995)). The United States has now proven by a preponderance of the evidence that full restitution is proper in the amount and nature requested as to both Defendants. And the United States' delay in submitting the necessary proof will not stand in the way of the due administration of justice. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

12

1. The United States' Motions for Reconsideration of the Denial of Restitution [**R. 67 R. 40,** *United States v. Theresa Bowling***, 6:14-cr-00024-GFVT**] are **GRANTED**, consistent with the findings of this Order;

2. The United States Probation Office is **DIRECTED** to prepare Amended Judgments for the following Defendants:

   a. **Kendra Nicole Lewis,** and

   b. **Theresa Bowling**; and

3. The Amended Judgments **SHALL** reflect that Defendants Lewis and Bowling are responsible for paying **restitution in the amount of $420,806.60** to Clyde Vez Bennett IV in monthly installments, in an amount to be determined by the United States Probation Office. Restitution is to be paid jointly and severally as to Ms. Lewis, Ms. Bowling, and Ms. Wilson, consistent with the findings of this Order.

This the 9th day of September, 2020.

Gregory F. Van Tatenhove
United States District Judge